UNITED STATES DISTRICT COURT  
EASTERN DISTRICT OF NEW YORK

ONLINE PUBLICATION ONLY

DPWN HOLDINGS (USA), INC.,

                    Plaintiff,

- versus -

UNITED AIR LINES, INC. d/b/a UNITED AIRLINES; UNITED CONTINENTAL HOLDINGS, INC., f/k/a UAL CORP.,

                    Defendants.

ORDER

11-CV-564 (JG)

A P P E A R A N C E S:

    ORRICK, HERRINGTON & SUTCLIFFE LLP
        1152 15th Street, N.W.
        Washington, D.C. 20005
    By:    Garret G. Rasmussen
        Antony P. Kim and J. Peter Coll, Jr. on the brief
        *Attorneys for Plaintiff*

    MAYER BROWN LLP
        1999 K St., N.W.
        Washington, D.C. 20006
    By:    Charles A. Rothfeld
        Richard J. Favretto and Michael B. Kimberly on the brief
        *Attorneys for Defendants*

JOHN GLEESON, United States District Judge:

        This case is a member of *In re Air Cargo Shipping Services Antitrust Litigation*, 06-md-1775 (E.D.N.Y.), an MDL based on an alleged price-fixing conspiracy among airlines providing freight shipping services.

        I denied a motion to dismiss in this case in 2012. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 871 F. Supp. 2d 143 (E.D.N.Y. 2012) ("*DWPN I*"). I granted

defendants permission to take an interlocutory appeal from that denial under 28 U.S.C. § 1292(b), *see* DE 41 (July 31, 2012), and the Second Circuit remanded the matter for additional proceedings, *see DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014) ("*DPWN II*"). Following remand, the plaintiff amended its complaint, *see* Second Amended Complaint ("SAC"), DE 54, and the defendants renewed their motion to dismiss. I heard argument on the motion on July 25, 2014; afterward, I requested additional briefing on (broadly) whether DHL should have filed this claim in United's bankruptcy case, rather than as a separate civil action. *See* Order (July 30, 2014), DE 64.

> The Second Circuit's remand order concluded as follows:
>
> We are skeptical of DHL's contention that it was not aware of, or with reasonable diligence could not have become aware of, its antitrust claim in time to assert it in the bankruptcy proceeding. But whether that contention is supportable and the related issue of whether due process required United to give DHL explicit notice of an antitrust claim should not be decided at the appellate level before the District Court has considered these matters under proper standards. Because the District Court erred in accepting as true DHL's allegation of lack of sufficient knowledge to file an antitrust claim in bankruptcy, the matter must be remanded for reconsideration.
>
> On such reconsideration the District Court must determine what aspects of United's alleged price-fixing conduct were known by DHL, or reasonably ascertainable, prior to plan confirmation, whether the allegations of the class action complaint were sufficient to alert DHL to its antitrust claim, and whether a post-confirmation claim would have been entertained. If DHL lacked such knowledge, the inquiry will then shift to whether United knew or should have known of its potential antitrust liability such that due process required it to notify DHL of the potential claim. At least these matters must be considered before a determination can be made whether DHL would be denied due process if its potential antitrust claim was discharged.
>
> Accordingly, we remand for further consideration, either on the face of the pleadings, or after discovery, of United's contention that DHL's antitrust claim was discharged.

*DPWN II*, 747 F.3d at 152-53.

As the remand order makes clear, the ability of DHL to maintain its claims depends critically on whether, as DHL contends, "it was not aware of, or with reasonable diligence could not have become aware of, its antitrust claim in time to assert it in the bankruptcy proceeding." *Id.* at 152. The remand order makes equally clear, however, that I may consider that question of knowledge (and any other matters bearing on whether DHL's claim should be considered discharged by United's bankruptcy) "either on the face of the pleadings, or after discovery." *Id*. at 153.

I conclude that the better course at this time is to resolve the question of DHL's knowledge of its potential claim only after discovery has been conducted. Therefore, I deny United's motion to dismiss. Briefly, the reason for the denial is that I find the case cannot be resolved as a matter of law on the face of the pleadings.

In deciding a motion to dismiss, a court normally assumes the truth of the plaintiff's allegations. But that principle does not apply to legal conclusions masquerading as facts, and, as the Second Circuit pointed out, it does not apply to general factual allegations contradicted by more specific factual material pleaded elsewhere in the complaint. *See DPWN II*, 747 F.3d at 151-52.

Applying my "judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), I do not find that any factual allegations in the complaint so undermine DHL's continued claim that it lacked knowledge of its potential antitrust claim that I can conclude, as a matter of law, that DHL *did* know (or reasonably should have known) of its antitrust claim in time for it to be discharged in bankruptcy. Consistent with *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), DHL's claim of ignorance is not entitled to

3

deference insofar as it states the plaintiff's own legal conclusion about what inferences it should have drawn based on what it did actually know. But DHL also maintains that it simply did not know the actual facts on which it now relies to support its claim. And it claims that it did not, from any facts that it *did* know, actually conclude that it had a potential antitrust claim until 2010.[1] Moreover, DHL alleges a number of facts that would have made it more difficult to discover United's alleged behavior. For example, it claims that United adopted a supposedly independent fuel price index to disguise its participation in price fixing, *see* SAC ¶ 70; that United did not disclose participation in any surcharge conspiracy in SEC filings after the February 14, 2006 worldwide raids, but instead only indicated that it was a possible source of information for investigators, *id.* ¶¶ 202-04; and, in the Second Amended Complaint, DHL has clarified that the parallel price increases were somewhat staggered in time, suggesting legal follow-the-leader behavior rather than illegal price fixing, *e.g. id*. ¶¶ 55, 60. More broadly, DHL alleges that it did not have any direct evidence of United's participation in the conspiracy until July 5, 2010, when DHL received evidence through settlement with another airfreight carrier. *Id*. ¶ 191.

It is true that, according to the SAC, DHL was aware of other facts that suggested a conspiracy, and that United might have participated. In particular, the Second Circuit pointed to the failed attempt to receive regulatory approval of Resolution 116ss; the widespread adoption of fuel surcharges; and the supra-market increase of surcharges. *See DPWN II*, 747 F.3d at 152. But I am not in a position at this time to weigh these competing allegations (after all, none of the SAC's allegations are yet established as facts) to determine what DHL knew and when. A more

---

[1] Unlike the typical case (such as *Iqbal*) in which a defendant attacks as conclusory the plaintiff's claim about the *defendant's* knowledge, the argument here is that a plaintiff's claim about its *own* knowledge is conclusory. The crucial knowledge claim here relates to information under the plaintiff's own control (and as to which, if the complaint is dishonest, Rule 11 sanctions would certainly attach).

4

detailed factual presentation – including documentary evidence and, especially here, testimonial evidence obtained during discovery – is needed before DHL's professed ignorance can properly be assessed.

Thus, although I deny United's motion to dismiss, the question of what DHL knew and when will no doubt be front and center at the summary judgment stage.

So ordered.

John Gleeson, U.S.D.J.

Dated: September 16, 2014
       Brooklyn, New York